# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ROBERT W. GEVERS, II**
Gevers & Tracey
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

FILED

May 17 2012, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| HERIBERTO SUAREZ, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | ) No. 02A05-1106-PC-325 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause Nos. 02D04-0905-FA-27; 02D04-1005-PC-35

**May 17, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Petitioner Heriberto Suarez appeals from the post-conviction court's denial of his petition for post-conviction relief ("PCR"), contending that the post-conviction court erred in denying his claim that he received ineffective assistance of trial counsel. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Suarez was born on May 24, 1944, and emigrated from Mexico to the United States in 1955. Suarez has never attained American citizenship. On September 11, 2009, Suarez pled guilty to Class C felony child molesting. In exchange for his guilty plea, the State agreed to dismiss a Class A felony child molesting charge. The trial court accepted Suarez's guilty plea and sentenced him to four years of incarceration with two suspended to probation. On May 10, 2010, Suarez filed a PCR petition, contending that he had received ineffective assistance of trial counsel. Specifically, Suarez contended that his attorney, Patrick J. Arata, had been ineffective for failing to advise Suarez of the possibility of deportation resulting from his conviction.

At the hearing on Suarez's PCR petition, Attorney Arata testified that he had assumed that Suarez was an American citizen and so did not inquire regarding his status or advise him that a criminal conviction might subject him to deportation. According to Attorney Arata, he considered several possible defense strategies, including that (1) the child, who is one of Suarez's grandchildren, could have been mistaken as to the nature of the touching; (2) Suarez's wife, who although blind, was in the room when the alleged molestation took place and would have heard something; (3) animosity between the Suarezes and the child's parents could have caused the child's parents to induce her to

2

fabricate; (4) there was no physical evidence other than a small scratch on the child's vagina; (5) the child was ill at the time and it would be illogical to touch an ill child in that fashion; and (6) there had been a previous allegation that a person named "Carlos" had molested the child, which, if true, might explain the vaginal scratch and how she knew how to describe the molestation. Attorney Arata also mentioned that "Sex cases are probably, in my opinion, the toughest cases to defend." Tr. p. 18.

Suarez testified that he pled guilty to the Class C felony so that he could receive a shorter sentence and return to care for his wife, who is in poor health. Suarez testified that he was aware that he "could have gotten twenty to fifty years"[1] and admitted that the shorter sentence he received as a result of the plea agreement would have been a "good deal" even if he had no family at all. Tr. p. 30. Nonetheless, Suarez testified that he would have fought the Class A felony charge and not pled guilty to the Class C felony had he known that pleading guilty would subject him to possible deportation.

On June 3, 2011, the post-conviction court denied Suarez's petition, concluding that he had not been prejudiced by any deficient performance by his trial counsel. The post-conviction court concluded that, although Suarez had established that he had good reason to stay in the United States, the plea agreement conferred upon him a great benefit and he had failed to show an objective likelihood of success at trial. The post-conviction court concluded that, under the circumstances facing Suarez, there was no reasonable probability that a reasonable hypothetical defendant would have elected to go to trial.

---

[1] In fact, pursuant to Indiana Code section 35-50-2-2(i) (2009), because he was over twenty-one and his alleged victim was younger than twelve, had he been convicted of Class A felony child molesting, the trial court could only have suspended "that part of the sentence that is in excess of (30) thirty years."

## DISCUSSION AND DECISION

### *PCR Standard of Review*

Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.… Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

### Whether Suarez Received Ineffective Assistance of Trial Counsel

We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> [A] claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome."

*Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). Because an inability to satisfy either prong of this test is fatal to an ineffective assistance claim, this court need not even evaluate counsel's performance if the petitioner suffered no prejudice from that performance. *Vermillion v. State*, 719 N.E.2d 1201, 1208

4

(Ind. 1999). The State concedes that Suarez's trial counsel performed deficiently in failing to advise him of the risks of deportation, so we focus solely on whether Suarez suffered any prejudice from this performance.

Suarez contends that his trial counsel was ineffective for failing to advise him before he pled guilty that he could be deported to Mexico following discharge of his sentence. In *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001), the Supreme Court created two categories of ineffective assistance of counsel claims relating to guilty pleas, applying different treatments to each respective category depending on whether the ineffective assistance allegation related to (1) a defense or failure to mitigate a penalty, or (2) an improper advisement of penal consequences. *See Willoughby v. State*, 792 N.E.2d at 560, 563 (Ind. Ct. App. 2003), *trans. denied*. Suarez's claim is of the second type.

In such cases, the Indiana Supreme Court has stated that

in order to state a claim for postconviction relief a petitioner may not simply allege that a plea would not have been entered. Nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. To state a claim of prejudice from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, the petitioner must allege … "special circumstances," or, as others have put it, "objective facts" supporting the conclusion that the decision to plead was driven by the erroneous advice.
    We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised. Nevertheless, … a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* [*v. Lockhart*], 474 U.S. [52,] 59 [(1985)].

*Segura*, 749 N.E.2d at 507 (footnote omitted).

5

In addition to any special circumstances shown by the defendant, we also think it appropriate to consider the strength of the State's case. It is apparent that any reasonable defendant would take this into account when pondering a guilty plea. When evaluating the likelihood of conviction or acquittal, such "predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill*, 474 U.S. at 59-60 (quoting *Strickland*, 466 U.S. at 695). Finally, we think it also appropriate to consider the benefit conferred upon the defendant by his guilty plea. It seems clear that any reasonable person's decision whether to plead guilty, regardless of incorrect advisements about some penal consequences, would be informed by this consideration. *See, e.g.*, *Hacker v. State*, 906 N.E.2d 924, 928 (Ind. Ct. App. 2009), *trans. denied* ("Hacker clearly benefitted from his plea agreement. We believe this is a proper consideration under *Segura* for rejecting Hacker's contention that he was objectively prejudiced by trial counsel's misadvice regarding the maximum sentence he faced.").

Here, as a threshold matter, we conclude that Suarez established special circumstances that would have affected a reasonable person's decision to plead guilty. It is undisputed that Suarez's wife is blind and in poor health and that he was her primary caregiver. Moreover, it should be noted that deportation can be a very serious penal consequence, with the United States Supreme Court recognizing that it is, at least in some

cases, "'the equivalent of banishment or exile[.]'"[2] *Padilla v. Kentucky*, ⸺ U.S. ⸺, 130 S.Ct. 1473, 1486 (2010) (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390-391 (1947)). Were Suarez to be deported, it would be far more difficult for him to provide for his ailing wife, and he would be leaving a country that has been his home since 1955. On the other hand, as the trial court noted at sentencing, Suarez appears to have a large family that could care for his wife in his absence.

Second, based on the record before us, we conclude that Suarez's objective probability of success at trial was fairly low. Although Attorney Arata mentioned several possible avenues of defense for Suarez (presumably suggested by Suarez), he did not claim that any were particularly substantiated and none was supported by any other evidence in the record. There was no evidence that the alleged victim had been coached to lie or that her story had changed over time. Additionally, there was some physical evidence, in the form of a vaginal scratch, consistent with the allegation that Suarez had digitally penetrated the victim. On the whole, the case seems objectively solid with no obvious weaknesses for a type of case, which will often be tried with a lack of physical evidence and/or an alleged victim with known credibility issues.

As for the benefit conferred upon Suarez by his guilty plea, it was substantial, to say the least. Had Suarez been convicted of Class A felony child molesting, under the facts of this case he would have served a minimum of twenty-five actual years in prison. Because the alleged victim in this case was under the age of twelve and Suarez over the

---

[2] For Suarez, who has been in the United States since 1955 and was a legal resident, deportation would be much closer to banishment or exile than it would be, say, for a drug courier planning on illegally visiting the country for only a short time.

7

age of twenty-one, his base sentence would have been a minimum of thirty years of incarceration. *See* Ind. Code § 35-50-2-2(i). Moreover, Suarez, had he been convicted as charged, would have been a credit restricted felon and therefore could never have earned any more than one day of credit time for each six days served. *See* Ind. Code §§ 35-41-1-5.5 (2009); 35-50-6-3(d) (2009); 35-50-6-4(b) (2009). On the high end, Suarez could have received a fifty-year sentence, of which he would have had to serve approximately 41.7 years.

As it happened, Suarez pled guilty to a Class C felony, which meant that his sentence would range from two to, at most, eight years.[3] *See* Ind. Code § 35-50-2-6 (2009). Additionally, Suarez was eligible to be assigned to credit classes I and II, where he could earn one day of credit time per day served or one day of credit per two days served, respectively. *See* Ind. Code § 35-50-6-3(a); -3(b) (2009). So, Suarez's maximum exposure, assuming he received a maximum sentence and earned absolutely no credit time, was eight years of incarceration under the plea agreement, a full seventeen years less than the bare minimum sentence he would have faced had he been convicted of the Class A felony. The four-year sentence Suarez did receive, with two years suspended to probation, saved him at least twenty-three years of incarceration and very likely twenty-four. Suarez received a very substantial benefit from his guilty plea.

Given the above, we conclude that a reasonable defendant's decision to plead guilty would not have been affected by the knowledge of the risk of deportation. While

---

[3] It seems that the plea agreement, a copy of which does not appear in the record on appeal, provided that Suarez's sentence would be at least two years of incarceration, which, assuming he remained assigned to credit Class I the entire time, would mean actual incarceration of one year.

deportation would be a great inconvenience for Suarez, it is reasonable to assume that he would be in a better position to provide for his wife from Mexico than from prison. Finally, the extraordinarily large benefit Suarez received in exchange for his guilty plea cannot be denied, and, in our view, overwhelms all other considerations in this case. Suarez has failed to establish that he was prejudiced by his trial counsel's failure to advise him of the risk of deportation.

The judgment of the post-conviction court is affirmed.

CRONE, J., and BROWN, J., concur.