# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARK A. KING**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Sep 14 2012, 9:23 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK CLARKE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1202-PC-65 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-0409-PC-169079

**September 14, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Mark Clarke appeals from the denial of his petition for post-conviction relief following his conviction for dealing in cocaine as a class B felony. Clarke presents the following issue for review: Did trial counsel render ineffective assistance in failing to advise Clarke with respect to the possibility of deportation in the event he pleaded guilty?

We affirm.

The facts are that on December 13, 2007, Clarke pleaded guilty to class B felony dealing in cocaine (the 2007 offense) as a lesser included offense of the class A felony offense with which Clarke was originally charged. The trial court sentenced Clarke to six years in prison, all but two days of which was suspended, and ordered that he serve two years on probation.

On June 26, 2008, Clarke entered into a second written plea agreement under a separate cause number (the second offense). In the second agreement, he admitted that he committed the crime of resisting law enforcement, and in so doing violated the conditions of his probation in the 2007 case. Pursuant to the second plea agreement, the trial court ordered that Clarke serve five years of the previously suspended sentence for the 2007 conviction, to be served consecutively to the one-year sentence for his resisting law enforcement conviction. Sometime thereafter, Clarke, who was born in Barbados, was taken into federal custody and faced deportation hearings. More detailed facts of the underlying offense will be provided below.

Clarke filed a petition for post-conviction relief on December 7, 2010.[1] On August 8,

---

[1] Clarke's appellant's brief refers us to pages 35-36 of the *Appellant's Appendix* to support this date for the filing of the PCR petition. The only arguably relevant entry is for December 9 and records a "case event" of

2011, pursuant to the parties' request, the post-conviction court ordered that the post-conviction proceedings would proceed on affidavit. In his affidavit, Clarke declared that his trial attorney did not advise him that pleading guilty in the 2007 offense would subject him to deportation. He further averred that had his trial attorney so advised him, he would not have pleaded guilty and would instead have gone to trial. Clarke's trial attorney in the 2007 offense was Michael Caudill. In his affidavit, Caudill averred that he did not advise Clarke that his guilty plea to dealing in cocaine could subject him to deportation. In addition to these affidavits, Clarke submitted copies of the birth certificates of his two American-born children. The post-conviction court denied Clarke's PCR petition on January 4, 2012.

Clarke contends trial counsel rendered ineffective assistance in failing to advise him of the possibility of deportation in the event he pleaded guilty. Our standard of review is well settled. In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Kubsch v. State,* 934 N.E.2d 1138 (Ind. 2010). A petitioner who has been denied post-conviction relief is in the position of appealing from a negative judgment. *Id.* The standard of review for a petitioner denied post-

_____

"CASE TYPE CHANGED TO POST-CONVICTION". *Id*. at 35. Similarly, the court's December 17 order pertaining to that petition states, "The Defendant, pro se, having filed his Motion for Post Conviction remedy under PC1 on December 9, 2010." *Id.* at 59. The petition itself appears to have been finalized on December 7, as reflected in the dating of Clarke's signature, as well as that of the notary public who attested to the authenticity of Clarke's signature. We note this discrepancy merely for the sake of accuracy, as there is no controversy about which PCR petition we address in this appeal, and the precise date is not a substantive issue. We opt to use the December 7 date merely for the sake of convenience.

conviction relief is rigorous. *Trujillo v. State*, 962 N.E.2d 110 (Ind. Ct. App. 2011). To gain reversal, the petitioner must convince us that the evidence unerringly and unmistakably leads to the opposite conclusion. *Id.*

Clarke's claim is presented in terms of ineffective assistance of counsel. To prevail on such a claim, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *Ward v. State,* 969 N.E.2d 46 (Ind. 2012) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)); *see also Taylor v. State,* 840 N.E.2d 324 (Ind. 2006) (the failure to satisfy either component will cause an ineffective assistance of counsel claim to fail). This is the so-called *Strickland* test. Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Trujillo v. State*, 962 N.E.2d 110. "To establish the requisite prejudice, a petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 114. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. State,* 765 N.E.2d 578, 585 (Ind. 2002). The two elements of *Strickland* are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Landis v. State*, 749 N.E.2d 1130 (Ind. 2001).

Clarke contends that the failure to explain the full penal consequences, including the risk of deportation, caused him to accept a plea agreement that he would have rejected following a full advisement. Because he was convicted pursuant to a guilty plea, we must

4

analyze his claim under *Segura v. State,* 749 N.E.2d 496 (Ind. 2001). *Segura* categorizes two main types of ineffective assistance of counsel cases, the second of which applies here. *Smith v. State,* 770 N.E.2d 290 (Ind. 2002). This category relates to "an improper advisement of penal consequences," and is divided into two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure" and (2) "claims of incorrect advice as to the law." *Trujillo v. State*, 962 N.E.2d at 114 (quoting *Willoughby v. State,* 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), *trans. denied).* Clarke's challenge falls into the second category.

Our Supreme Court held in *Segura* that in order to state a claim for post-conviction relief under this subcategory, a petitioner may not simply allege that he or she would not have entered into a guilty plea, nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. Rather, the petitioner must "establish, by objective facts, circumstances that support the conclusion that [trial] counsel's errors in advice as to penal consequences were material to the decision to plead." *Segura v. State*, 749 N.E.2d at 507. In so doing, the petitioner "must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea." *Id.* In undertaking this analysis, we focus upon whether the petitioner proffered specific facts indicating that a reasonable defendant would have rejected the petitioner's plea had the petitioner's trial counsel performed adequately. *See Willoughby v. State,* 792 N.E.2d 560. Finally, our Supreme Court determined in *Segura* that the failure to advise a client of the possibility of deportation in the event of a conviction may, under certain circumstances, constitute

5

ineffective assistance of counsel.

Citing *Sial v. State*, 862 N.E.2d 702 (Ind. Ct. App. 2007), Clarke contends that the requisite "special circumstances" exist in his case to justify setting aside the plea. In *Sial*, the defendant, a non-citizen resident of the United States, pleaded guilty to theft as a class D felony. His attorney did not advise him that the conviction subjected him to the possibility of deportation. Sial later filed a post-conviction petition seeking to set aside the conviction on the basis that his counsel rendered ineffective assistance in failing to advise him of the possibility of deportation. Sial appealed the denial of his post-conviction petition. We reversed, applying the *Segura* requirement that a successful petitioner must, in order to "state a claim of prejudice from counsel's omission or misdescription of penal consequences that attach to both a plea and a conviction at trial, … allege ... "'special circumstance,' or ... "'objective facts' "supporting the conclusion that the decision to plead was driven by the erroneous advice." *Segura v. State*, 749 N.E.2d at 507 (footnotes containing internal citations omitted). The "special circumstance" cited as supporting the grant of Sial's post-conviction petition was the fact that he had a wife and daughter living in the United States.[2] The court explained it thus:

> Here, Sial testified that he has a wife and a thirteen-year-old daughter. Inasmuch as Sial has been in the United States for over twenty years, we infer that his daughter was likely born here and, consequently, would be an American citizen. If deported, Sial would be forced either to leave his wife and child behind or to uproot them from this country—most likely the only home his daughter has ever known. We believe that these are sufficient special circumstances and specific facts to establish a reasonable probability that if

---

[2]  We note also that the *Sial* opinion might be interpreted to include as a special circumstance that "he has lived in the country for over twenty years[.]" *Sial v. State*, 862 N.E.2d at 707.

6

> Sial's attorney had advised him that deportation is a possible consequence of a felony conviction, Sial would have chosen to proceed to trial rather than to plead guilty.

*Sial v. State*, 862 N.E.2d at 706 (internal citation omitted).

Clarke contends that his special circumstances are the same as those that prompted this court to reverse the denial of Sial's post-conviction petition, i.e., "the long period of time he has been in this country, his two children that were born in this country, and the possibility that if he is deported he may never see those children again[.]" *Appellant's Brief* at 10.

Beginning with the length of time that the thirty-three-year-old Clarke has lived in the United States, we do not find a span of eleven years to be so long, in and of itself, as to compel a finding of special circumstances. *See Trujillo v. State*, 962 N.E.2d 110 (rejecting the non-citizen defendant's argument that special circumstances justified setting aside his guilty plea, where he was fifty-two years old and had lived in the United States for approximately thirty-six years). As for the claim that he would have eschewed a guilty plea because such would have created the possibility that he would never see his two children *again*, we note that Clarke's guilty plea was entered in December 2007. At that time, Clarke had not yet seen either of his children, as both were still *in-utero* in December 2007. The oldest was born approximately one month later, and the second was born approximately six months later. Moreover, he was not married to either of the women who were carrying his children. Although we cannot say precisely how, surely these particular circumstances change the equation and weaken his case for the existence of special circumstances based

7

upon relationships with his children. Even assuming that Clarke has established special circumstances, however, we are not therefore obliged to set aside the guilty plea.

This court has recently determined in this context that, "[i]n addition to any special circumstances shown by the defendant, we also think it appropriate to consider the strength of the State's case." *Suarez v. State*, 967 N.E.2d 552, 556 (Ind. Ct. App. 2012), *trans. pending*. As the *Suarez* panel aptly observed, "any reasonable defendant would take this into account when pondering a guilty plea." *Id*. Indeed, our Supreme Court indicated in *Segura* that this is a valid consideration. *See Segura v. State*, 749 N.E.2d at 507 ("[w]e see no reason to require revisiting a guilty plea if, at the end of the day, the inevitable result is conviction and the same sentence"). We also will consider the nature of the benefit conferred upon the defendant by his guilty plea, because "any reasonable person's decision whether to plead guilty, regardless of incorrect advisements about some penal consequences, would be informed by this consideration." *Id*.

In order to fully evaluate the strength of the State's case against Clarke, we look to an opinion issued by our Supreme Court concerning the same trial court cause number, affirming the trial court's denial of Clarke's motion to suppress evidence upon interlocutory appeal. The underlying facts are set out more thoroughly in that opinion than they were at the guilty plea hearing, the transcript of which was provided in this appeal. Those facts are as follows:

> On September 16, 2004, Officer Tanya Eastwood of the Indianapolis Police Department was dispatched to 3736 North Meridian Street to investigate an anonymous report that "there was a black car with nice rims in front of the apartment building selling drugs." She arrived at the scene and

8

found a black 1995 Nissan Maxima parked in front of the apartment building with two occupants. Eastwood activated her flashers and placed her spotlight so she could see Mark Clarke in the driver seat and Joshua Taylor in the back seat on the passenger side. When Eastwood approached the driver's side on foot, Clarke had his license and registration "hanging out the window."

Eastwood asked Clarke what he and Taylor were doing and how long they had been parked in front of the apartment. Clarke responded that they had been there about five minutes and that "he was dropping a passenger off at an apartment building down the street" approximately one-half block from their current location. Eastwood obtained Taylor's identification and returned to her car to run driver's license and warrant checks on both Clarke and Taylor. After discovering no outstanding warrants for either, Eastwood returned the information. She then told Clarke that she had received a "report of narcotics activity" and asked Clarke if there was anything illegal in the car. When Clarke said "there was not," Eastwood asked Clarke "if he cared if [she] searched his car," and Clarke responded, "I don't have anything in the car." According to Eastwood, she then asked Clarke "Do you mind if I search it?" and Clarke responded, "No," and "voluntarily opened his door and got out of the car on his own." Eastwood testified that Clarke left his car door open and that his body language indicated that she had permission to search the car. By this time, a second officer, Townsend, had arrived and "watched" Clarke and Taylor on the sidewalk while Eastwood conducted the search. Neither Clarke nor Taylor was physically restrained.

Eastwood found "a large amount of money, divided into several different bundles, divided by denominations" in the center console of the Nissan. She then requested a narcotics canine and was told that Park Ranger K9–1 Officer Phillip Greene would be at the scene within two minutes. In the meantime, Eastwood continued searching the car and "immediately" located a sandwich baggie containing marijuana. Eastwood asked Clarke why he consented to the search if it contained marijuana, and Clarke responded that he "forgot it was in there." Eastwood then placed Clarke under arrest.

Officer Greene and his dog arrived at the scene, and the dog promptly indicated that narcotics were in the vehicle. Officer Greene then located a partially smoked marijuana cigarette and a baggie containing five individually wrapped baggies that the officers suspected contained over three grams of cocaine. Eastwood then Mirandized Clarke and Taylor.

After Taylor denied any knowledge of the drugs in the car or any involvement in drug dealing, Eastwood asked Clarke if there was anything else in the car. Clarke said "no," and Eastwood asked him if he wanted to talk with a detective "to help himself out." Clarke responded, "No. It's all over for me now anyway." While waiting for a police wagon, Clarke attempted to flee and was apprehended a few blocks away after a chase on foot.

*Clarke v. State*, 868 N.E.2d 1114, 1116-17 (Ind. 2007).

The evidence against Clarke included the contraband, the large amount of cash found in the vehicle, and, we presume, the testimony of the two officers at the scene of the stop and arrest. Based upon the nature and strength of this evidence, we conclude that the objective probability of success at trial was low. Moreover, Clarke received a significant benefit in exchange for his guilty plea. The State agreed to reduce the dealing charge from a class A to a class B felony, and agreed to dismiss the marijuana charge and the resisting charge. The reduction in the dealing charge alone reduced his sentence exposure from an advisory sentence of thirty years to an advisory sentence of ten years. As it was, he was sentenced to six years, all suspended, and two years on probation. In summary, Clarke received a substantial benefit from his guilty plea.

Even assuming Clarke has established special circumstances with respect to his unborn children, considering the strength of the evidence against him and the significant benefit conferred upon him under the plea agreement, we conclude that the knowledge of the risk of deportation would not have affected a reasonable defendant's decision to plead guilty. Although deportation would be a considerable inconvenience for Clarke, it is reasonable to assume he would be in a better position to provide for his then-unborn children from Barbados than from prison. Accordingly, Clarke has not established that he was prejudiced by trial counsel's failure to advise him of the risk of deportation.

As a final matter, we take this opportunity to encourage criminal defense lawyers henceforth to ascertain the citizenship of their clients and to advise them of the implications

attending convictions with respect to the risk of deportation.  Among other things, such would obviate the need for post-conviction and appellate courts to undertake a "special circumstances" analysis.  In the present case, the State concentrated much of its effort on appeal in arguing that trial counsel did not render deficient performance in failing to give this advisement because there is no indication he knew that Clarke was a non-citizen.   In support of this assertion, the State cites *Segura*.  In that decision, our Supreme Court observed that the question of whether the failure to advise constitutes deficient performance is fact-sensitive, noting:

> [T]he failure to advise of the consequence of deportation can, under some circumstances, constitute deficient performance. Otherwise stated, we cannot say that this failure as a matter of law never constitutes deficient performance. Whether it is deficient in a given case is fact sensitive and turns on a number of factors. These presumably include the knowledge of the lawyer of the client's status as an alien, the client's familiarity with the consequences of conviction, the severity of criminal penal consequences, and the likely subsequent effects of deportation. Other factors undoubtedly will be relevant in given circumstances.

*Id*. at 500.

The State asks us to focus upon the clause, "the knowledge of the lawyer of the client's status as an alien" as one of the facts a court should consider when deciding whether the failure to advise constitutes deficient performance.  We need not address this question in the present case because the post-conviction court's decision is affirmable on other grounds. We note, however, that this issue is percolating in other states and the early trend seems to be in favor of imposing a duty on criminal defense attorneys to ascertain the citizenship status of their clients.  *See*, *e.g., Commonwealth v. Clarke*, 949 N.E.2d 892, 905 (Mass. 2011) ("[t]hat

the defendant's counsel failed to ascertain that the defendant was not a United States citizen may be sufficient to satisfy the first prong of the *Saferian* standard because effective representation requires counsel to gather at least enough personal information to represent him"); *State v. Paredez*, 101 P.3d 799, 805 (N.M. 2004) ("[w]e hold that criminal defense attorneys are obligated to determine the immigration status of their clients. If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain"); *Salazar v. State*, 361 S.W.3d 99, 102 (Tex. App. 2011) (the argument that there was no deficient performance because there was no indication the attorney knew the defendant had less than five years of legal resident status "is not persuasive because the counsel's duty to give correct legal advice where the consequences of a guilty plea with respect to deportation are clear carries with it the obligation to investigate what the deportation consequences to the client would be given the client's individual circumstances"); *but see State v. Stephens*, 265 P.3d 574, 577 (Kan. Ct. App. 2011), *review denied* ("[t]he *Padilla* Court did not extend its ruling to obligate defense counsel to correctly predict a client's probation or prison sentence, nor did the *Padilla* Court impose upon counsel the duty to investigate the citizenship or immigration status of every client in a criminal case).

Judgment affirmed.

BROWN, J., and DARDEN, SENIOR JUDGE, concur.