No. 14-0603 - State of West Virginia v. Orville M. Hutton

**FILED**

**June 16, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring, in part, and dissenting, in part:

I concur in the majority's historical analysis of the common law writ of error coram nobis, as well as its ultimate conclusion that the writ remains available only in extraordinary circumstances in criminal proceedings in West Virginia. Further, while I do not disagree with the majority's new syllabus point four to the extent it reflects the holding of the United State Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356 (2010), I disagree with the majority's implication that *Padilla* imposes a duty on lawyers to explore the immigration status of all criminal defense clients. Moreover, I do not believe that *Padilla* has any application under the particular facts and circumstances of the case at bar.

The sole similarity between Mr. Hutton in the instant matter, and the petitioner in *Padilla*, Jose Padilla, is that both were longtime lawful permanent residents of this country, but not American citizens, when they became subject to deportation as a direct consequence of their guilty pleas to criminal charges. What remains are two factually significant differences that render *Padilla* inapplicable to Mr. Hutton's situation.

1

First, it appears from the facts set forth in *Padilla* that Mr. Padilla's counsel was aware that his client was not a citizen of the United States prior to Mr. Padilla entering his guilty plea. Second, armed with the knowledge of his client's immigration status, Mr. Padilla's counsel proceeded to advise him that he "'did not have to worry about immigration status since he had been in the country so long.'" *Padilla* at 359 (internal citation omitted). Based upon that legal advice, which was later revealed to be incorrect, Mr. Padilla proceeded to plead guilty to criminal drug charges, making his "deportation virtually mandatory." *Id.*

Conversely, in the case *sub judice*, the appendix record contains a transcript of the coram nobis hearing held before the circuit court during which Mr. Hutton testified that he never told his counsel of his immigration status. Consequently, unlike the attorney in *Padilla*, and absent a record showing the contrary, it appears that Mr. Hutton's defense counsel was unaware that his client was not an American citizen. In further and significant contrast to *Padilla*, Mr. Hutton does not assert that his trial counsel gave him incorrect immigration advice.

In addressing Mr. Padilla's post-conviction challenge based on an ineffective assistance of counsel claim, the *Padilla* Court observed that the changes to the immigration law in this country have "dramatically raised the stakes of a noncitizen's criminal conviction," and that the "importance of accurate legal advice for noncitizens accused of

2

crimes has never been more important." *Id.* at 364. Upon its review of the relevant immigration statute, the Supreme Court found that statute to be "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* at 368. Accordingly, the Supreme Court found that Mr. Padilla had "sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland*[,]"[1] leaving the determination of whether Mr. Padilla can satisfy *Strickland's* second prong–prejudice–to the Kentucky courts. *Id.* at 369.[2]

Although deportation is a "particularly severe 'penalty[,]'" *id.* at 365 (internal citations omitted), it is clear from *Padilla* that the Supreme Court did not expressly impose a blanket duty upon lawyers to ask every client charged with a crime whether they are American citizens. The Supreme Court's silence in this regard has been recognized by other courts. For example, in *Clarke v. State*, 974 N.E.2d 562 (Ind. Ct. App. 2012), the court commented on the issue of whether criminal defense lawyers must "ascertain the citizenship of their clients[,]" observing that "this issue is percolating in other states[.]" *Id.* at 568. The

---

[1]*See* Syl. Pt. 5, *State v. Miller*,194 W.Va. 3, 459 S.E.2d 114 (1995) ("In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.").

[2]Under the majority's remand, I would remind the circuit court that Mr. Hutton will need to prove that his counsel's performance was deficient under the first prong of *Strickland* and, if he is successful in that regard, he will still have to satisfy the second prong and prove prejudice before he will be entitled to relief.

3

Indiana court then cited *State v. Stephens*, 265 P.3d 574, 577 (Kan. Ct. App. 2011), *review denied*, wherein the Kansas court stated that "[t]he *Padilla* Court did not . . . impose upon counsel the duty to investigate the citizenship or immigration status of every client in a criminal case."[3]

More recently, in *State v. Rodriguez*, No. 108,505, 320 P.3d 449 (Table) (Kan. App. Mar. 14, 2014), the Kansas court relied upon *Stephens*, again noting that

> [t]he *Padilla* majority did not impose a duty to investigate the citizenship or immigration status of every client in a criminal case. *See State v. Stephens*, 46 Kan.App.2d 853, 856, 265 P.3d 574 (2011), rev. denied 294 Kan. 947 (2012). In his concurrence in *Padilla*, Justice Alito observed that in some cases, it may be hard for defense counsel even to determine whether a client is an . . . alien. *Padilla*, 559 U.S. at 379-80 (Alito, J., concurring). He suggested that "[w]hen a criminal defense attorney is aware" that a client is an . . . alien, he or she should advise the client of the immigration consequences and tell the client to consult an immigration specialist for advice on that subject. *Padilla*, 559 U.S. at 387.

*Id.* at *10. The Kansas court proceeded to find "there was no evidence presented establishing that Rodriguez's former attorney knew or had a reason to know Rodriguez was an undocumented alien prior to the entry of the no contest plea." *Id.* at *10. Similarly, in the case at bar, Mr. Hutton had been a resident of the United States since he was a young child, having lived here for nearly forty years at the time the criminal charges were brought against

---

[3] *See Clarke*, 974 N.E.2d at 569.

him. Consequently, there was likely no reason for his counsel to know that he was not an American citizen.

I believe the majority in the case at bar, like the majority in *Padilla*, leaves unclear whether lawyers must inquire of the immigration status of each and every client charged with a crime. And, the majority's footnote eighteen only serves to further muddy the waters.

In footnote eighteen, the majority excuses Mr. Hutton's admitted failure to advise his counsel of his immigration status by stating that the *Padilla* Court did not place a burden on criminal defendants to advise their lawyers of their immigration status. While that statement may be correct, I am concerned that the inverse implication of footnote eighteen is that the burden is on lawyers to explore the immigration status of every criminal defense client, notwithstanding the fact that *Padilla* did not expressly impose such a duty.[4]

_____

[4]I share Justice Alito's concerns about the burden that *Padilla* does place on a lawyer who is aware that his or her client is an alien. As Justice Alito summarized, "a criminal defense attorney should not be required to provide advice on immigration law, a complex specialty that generally lies outside the scope of a criminal defense attorney's expertise." *Id.* at 387-88 (Alito, J., concurring). Explaining further, Justice Alito stated that

> an alien defendant's Sixth Amendment right to counsel is satisfied if defense counsel advises the client that a conviction may have immigration consequences, that immigration law is a specialized field, that the attorney is not an immigration lawyer, and that the client should consult an immigration specialist if the

(continued...)

5

Because the focus of *Padilla* was on the importance of a lawyer giving his or her client accurate advice regarding the immigration consequences of a guilty plea, the Court simply never addressed precisely how immigration status was to be discerned. *See Stephens*, 265 P.3d at 577 ("The only issue the United States Supreme Court decided was whether defense counsel had a duty to inform his client, known to be a resident alien, of the effect of a guilty plea on the client's immigration status.").

Placing an affirmative duty on lawyers to ask every client whether he or she is an American citizen prior to entry of a guilty plea may seem an insignificant burden, particularly when contrasted with the possibility of adverse immigration consequences arising out of a guilty plea to criminal charges. However, absent an express holding by the United States Supreme Court imposing a blanket duty on lawyers to question every criminal defense client concerning their citizenship or immigration status, or unless an attorney reasonably should have known of his or her client's immigrant status under the particular circumstances, I do not believe that such a global duty of inquiry exists.[5]

---

[4](...continued)
    client wants advice on that subject.

*Id.* at 388 (Alito, J., concurring).

[5]Given the uncertainty created by *Padilla* in this regard, perhaps the issue should be addressed either through our procedural rules, or through a statutory enactment. *See Padilla*, 559 at 374, n.15 ("[M]any States require trial courts to advise defendants of possible immigration consequences. *See*, *e.g.*, Alaska Rule Crim. Proc. 11(c)(3)(C) (2009-2010); Cal.
(continued...)

6

For these reasons, I respectfully concur, in part, and dissent, in part, to the majority's decision in this case.

---

[5](...continued)
Penal Code Ann. § 1016.5 (West 2008); Conn. Gen. Stat. § 54-1j (2009); D.C. Code § 16-713 (2001); Fla. Rule Crim. Proc. 3.172(c)(8) (Supp. 2010); Ga.Code Ann. § 17-7-93(c) (1997); Haw. Rev. Stat. Ann. § 802E-2 (2007); Iowa Rule Crim. Proc. 2.8(2) (b) (3) (Supp. 2009); Md. Rule 4-242 (Lexis 2009); Mass. Gen. Laws, ch. 278, § 29D (2009); Minn. Rule Crim. Proc. 15.01 (2009); Mont. Code Ann. § 46-12-210 (2009); N.M. Rule Crim. Form 9-406 (2009); N. Y. Crim. Proc. Law Ann. § 220.50(7) (West Supp.2009); N.C. Gen. Stat. Ann. § 15A-1022 (Lexis 2007); Ohio Rev. Code Ann. § 2943.031 (West 2006); Ore. Rev. Stat. § 135.385 (2007); R.I. Gen. Laws § 12--12-22 (Lexis Supp.2008); Tex. Code. Ann. Crim. Proc., Art. 26.13(a)(4) (Vernon Supp. 2009); Vt. Stat. Ann., Tit. 13, § 6565(c)(1) (Supp.2009); Wash. Rev. Code § 10.40.200 (2008); Wis. Stat. § 971.08 (2005-2006).").

Decisions from other courts also reflect the use of plea forms that address the issue of citizenship. *See State v. Navarette-Pacheco*, No. 106,874, 286 P.3d 239, at *1 (Table) (Kan. Ct. App. Oct. 5, 2012) (observing that defendant's "'Acknowledgement of Rights and Entry of Plea' form read: 'If I am not a United States citizen, I understand that a conviction of a felony offense most likely will result in my deportation from the United States.'"); *Ramirez-Gil v. State*, 327 P.3d 1228, 1231 (Utah Ct. App. 2014) (noting defendant's acknowledgment that "written plea form contains the following statement, 'I understand that if I am not a United States citizen, my plea(s) today may, or even will, subject me to deportation under United States immigration laws and regulations, or otherwise adversely affect my immigration status, which may include permanently barring my re-entry into the United States. I understand that if I have questions about the effect of my plea on my immigration status, I should consult with an immigration attorney.'").

7