## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2015, 6:20 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Stephen T. Owens | Gregory F. Zoeller |
| Public Defender of Indiana | Attorney General of Indiana |
| Deidre R. Eltzroth | Katherine Modesitt Cooper |
| Deputy Public Defender | Deputy Attorney General |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael L. Bowling, | June 30, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 20A03-1501-PC-13 |
| v. | Appeal from the Elkhart Circuit Court |
| | The Honorable Terry C. Shewmaker, Judge |
| State of Indiana, | Cause No. 20C01-1212-PC-116 |
| *Appellee-Respondent.* | |

**Kirsch, Judge.**

[1] After the Elkhart Circuit Court denied Michael L. Bowling's petition for post-conviction relief, Bowling appeals and contends that the post-conviction court

clearly erred in denying his petition. On appeal, he raises one issue that we restate as the following two:

> I. Whether Bowling's plea of guilty to Class A felony manufacturing of methamphetamine was knowingly, voluntarily, and intelligently made; and
>
> II. Whether Bowling received effective assistance of trial counsel.

We affirm.

## Facts and Procedural History

On April 3, 2008, officers from Elkhart County's Interdiction and Covert Enforcement Unit ("ICE Unit") obtained and executed a search warrant at Bowling's residence, where he lived with his girlfriend and her two young children. Indiana State Police ("ISP") Trooper Jason Faulstich, a member of the ISP clandestine lab team, and other ISP officers arrived at the home and participated in the search. Officers found in the residence various items associated with the manufacture and use of methamphetamine, including reaction vessels containing different colored liquids and various coffee filters, some of which contained a white powdery substance. *Appellant's App*. at 90. Trooper Faulstich field-tested the white powdery substance in the coffee filters and reported that the substance tested positive for methamphetamine and had an approximate weight of two grams. *Id*. Trooper Faulstich tested samples of liquids taken from two reaction vessels, and those samples also tested positive for methamphetamine. He advised the ICE Unit that the samples of the liquid, when dried, would each have an approximate weight of two grams. *Id*. He approximated that the total weight of substance that field-tested positive for

methamphetamine was six grams. *Id.* Lab Team Members found other items at the residence such as muratic acid, denatured alcohol, crystal salt, lye, iodine, boxes of Sudafed pills, Coleman fuel, coffee filters, and a coffee bean grinder. As a result, on April 9, 2008, the State charged Bowling with Class A felony dealing in methamphetamine by manufacturing methamphetamine, pure or adulterated, in an amount of three grams or more. *Pet'r's* Ex. B.

[4] As part of the prosecution, the State sent seized substances and items to the ISP Laboratory for analysis. The coffee filters that contained a white powdery substance were determined to contain one-third of a gram of finished methamphetamine. *Pet'r's* Ex. A (Item 21). Four samples of liquids taken from reactionary vessels were determined to contain methamphetamine, but the lab did not indicate a weight of any finished product. *Id.* (Items 8A, 11A, 25A, and 46A). Another coffee filter likewise was determined to contain methamphetamine, but no weight or amount was included in the report. *Id.* (Item 63). A set of three other coffee filters tested positive for ephedrine. *Id.* (Item 59).[1]

[5] On June 17, 2009, Bowling, represented by counsel, pleaded guilty to Class A felony manufacturing methamphetamine. Under the agreement, his sentence was capped at thirty years executed. At the guilty plea hearing, he was advised

[1] The ISP Laboratory Report also reflects that a baggie containing a white powdery substance was submitted to the lab for analysis. The substance tested positive for methamphetamine, and the actual weight of it was .03 of a gram. *Pet'r's* Ex. A (Item 4). However, it appears this baggie was found in the pocket of Bowling's girlfriend, *Appellant's App.* at 90, and was not included as part of the evidence against Bowling.

of his rights, and he testified that he knew and understood his rights and that he understood the terms of his plea agreement. He stated he was satisfied with trial counsel's representation. Bowling admitted as a factual basis that on or about April 8, 2008, he and his girlfriend knowingly manufactured three or more grams of methamphetamine. In July 2009, the trial court accepted the plea and sentenced Bowling to thirty-five years in the Indiana Department of Correction, with seven years suspended to probation, for a total of twenty-eight years of incarceration.

[6] On December 14, 2012, Bowling filed a *pro se* petition for post-conviction relief. Subsequently, after the Indiana Public Defender's Office filed an appearance for Bowling, he filed an amended petition in November 2013. In this petition, he claimed that his plea was not knowingly, intelligently, and voluntarily entered because he was misled by trial counsel and agreed to plead guilty to Class A felony manufacturing methamphetamine when the State lacked sufficient proof to establish the "three grams or more" weight element of the offense. Ind. Code § 35-48-4-1.1(b)(1). He further claimed that his trial counsel was ineffective for failing to properly advise him of the defense that the State could not prove that he manufactured three grams or more of methamphetamine.

[7] Bowling testified at the September 2014 hearing, stating that he did not discuss trial strategy or possible defenses with his attorney and that he would not have pleaded guilty to a Class A felony if he had known that he could only have been convicted of a lesser felony. *PCR Tr.* at 5-6. Bowling also called his trial counsel, Tom Wilson, to testify. Wilson stated that Bowling's family had hired

him as private counsel to represent Bowling. Wilson graduated from the University of Notre Dame law school in 1993 and had been practicing law, including criminal law, since that time. Wilson testified that, as was his custom, he looked at the elements of the offense and possible defenses. He recalled, "I know one of the major issues that came up was the weight of the substance." *Id.* at 16. He testified, however, that he believed the State "had sufficient evidence to argue for the A felony charge." *Id.* at 17. As other evidence, Bowling offered, among other things, the ISP Laboratory Report, which was admitted into evidence without objection. Bowling also moved to admit the record of proceedings from the trial court, which motion the trial court granted.[2] *Id.* at 14.

[8] On January 5, 2015, the post-conviction court issued findings of fact and conclusions thereon denying Bowling's petition. It reaching that decision, the post-conviction court recognized that, at the time of Bowling's guilty plea, legal precedent did not demand that only finished methamphetamine product be used in the determination of the weight element of the offense. It concluded that Bowling's plea was knowingly, intelligently, and voluntarily entered into and that his trial counsel was not ineffective. Bowling now appeals.

---

[2] We note that, in his brief, Bowling argues that the post-conviction court should not have considered the Affidavit in Support of Warrantless Arrest because it was not part of the record. *Appellant's Br.* at 5. However, the post-conviction court granted Bowling's motion to incorporate the trial court's record, ordering, "The entire record will become part of the proceedings in this matter." *PCR Tr.* at 14.

# Discussion and Decision

[9] Bowling appeals the post-conviction court's denial of his petition for post-conviction relief. Post-conviction proceedings are not "super appeals" through which a convicted person can raise issues that he did not raise at trial or on direct appeal. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied* 537 U.S. 839 (2002); *Fowler v. State*, 977 N.E.2d 464, 466 (Ind. Ct. App. 2012), *aff'd on reh'g*, 981 N.E.2d 623 (Ind. Ct. App. 2013), *trans. denied*. Instead, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Fowler*, 977 N.E.2d at 466. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Roberts v. State*, 953 N.E.2d 559, 562 (Ind. Ct. App. 2011), *trans. denied*. A petitioner appealing from the denial of post-conviction relief stands in the position of one appealing from a negative judgment. *Soucy v. State*, 22 N.E.3d 683, 685 (Ind. Ct. App. 2014) (citing *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004)). A petitioner who appeals the denial of post-conviction relief faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. *Roberts*, 953 N.E.2d at 562. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. *Id*. The decision will be disturbed as being contrary to law only if the evidence is without conflict and

leads to but one conclusion, and the trial court has reached the opposite conclusion. *Soucy*, 22 N.E.3d at 685.

[10] On appeal, Bowling acknowledges that the State had sufficient evidence to charge him with manufacture of methamphetamine as a Class B felony; he takes issue with the elevation of the charge to a Class A, arguing that the State did not have sufficient evidence to support the allegation that he manufactured three grams or more of methamphetamine. *See Appellant's Br*. at 6. He claims that trial counsel's failure to advise him of that defense renders his guilty plea unknowing, unintelligent, and involuntary and the result of ineffective assistance of counsel.

## I. Voluntariness of Plea

[11] Bowling maintains that the post-conviction court erred in determining that his guilty plea was made knowingly, voluntarily, and intelligently. Before accepting a guilty plea, a trial court must determine that the defendant understands the nature of the charges to which he is pleading, that the plea will waive certain rights, and the range of penalties he faces. *See* Ind. Code § 35-35-1-2. Here, Bowling pleaded guilty to Class A felony manufacture of methamphetamine. The relevant statute, Indiana Code section 35-48-4-1.1(b), provides in relevant part that a person is guilty of dealing in a narcotic drug as a Class A felony if he knowingly or intentionally manufactures at least three grams of methamphetamine. Bowling's claim is that his plea was based on incorrect information regarding the evidence that the State had against him, arguing that the State did not have sufficient evidence to prove that the weight

of the methamphetamine he manufactured was at least three grams, as required to support a Class A felony.

[12]    In support of his argument, Bowling refers us to three pieces of evidence seized at the scene and relied on by the post-conviction court when it determined that three grams were involved: coffee filters, liquid mixture, and a coffee grinder. *Appellant's Br*. at 5-6. Bowling argues that, even though Trooper Faulstich had estimated, based on field-testing, that there were two grams of methamphetamine found in some coffee filters, later ISP Laboratory testing revealed that the weight was approximately one-third of a gram. With regard to the vessels that contained a liquid intermediate mixture, Trooper Faulstich's field-testing of samples from two vessels estimated that, when dried, each would contain two grams of methamphetamine. However, Bowling urges, "Considering [Trooper] Faulstich's overestimation of the meth recovered from the coffee filters, it can be assumed that his field measurement was faulty here as well." *Id*. at 5. Lastly, with reference to the coffee bean grinder, the post-conviction court stated that it had field-tested positive for methamphetamine in an amount of two grams; however, Bowling notes, the ICE report states that the coffee grinder tested positive for ephedrine, not methamphetamine. Bowling suggests that the ISP Laboratory results rendered Trooper Faulstich's field-testing estimates unreliable, and Bowling argues that the amount of finished methamphetamine was much less than the required three-grams necessary for a Class A felony conviction.

[13] Bowling refers us to our Supreme Court's determination in *Halsema v. State,* 823 N.E.2d 668, 674 (Ind. 2005), where the Court determined, "[I]n order to prove the element of weight of drugs or controlled substances, the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of the drugs or controlled substances is so large as to permit a reasonable inference that the element of weight has been established." Bowling maintains that, here, the State would have been unable to prove how much finished methamphetamine the intermediate mixture would have yielded if the manufacturing process had been completed, and because the State could not prove that the weight was over three grams, the State could not have convicted him of the Class A felony. Because his trial counsel advised him that he faced a Class A felony conviction, his plea was not knowingly, voluntarily, or intelligently entered. We disagree.

[14] The statute criminalizing the manufacture of methamphetamine criminalizes the manufacture of methamphetamine "pure or adulterated." Ind. Code § 35-48-4-1.1(a). The existing case law at the time Bowling entered his guilty plea provided that, when determining the amount of the drug involved, an intermediate mixture that contained the final drug was an "adulterated" drug. *See Traylor v. State,* 817 N.E.2d 611, 620 (Ind. Ct. App. 2004) (holding that evidence was sufficient to establish that defendant possessed over three grams of methamphetamine where evidence showed that defendant was in the process of

producing methamphetamine, and the product in the reaction vessel weighed well over three grams), *trans. denied.*[3]

[15] Years later, in 2014, our Supreme Court in *Buelna v. State,* 20 N.E.3d 137 (Ind. 2014), disagreed with the *Traylor* approach. In *Buelna*, a defendant was convicted of Class A felony dealing in methamphetamine and, on appeal, challenged the sufficiency of the evidence supporting his conviction, specifically the sufficiency of the evidence used to support the finding that he possessed more than three grams of methamphetamine. 20 N.E.3d at 141. In an unpublished memorandum decision, this court observed that the liquid sample taken from the vessels recovered from the defendant contained some methamphetamine and held the entire liquid mixture constituted "adulterated" methamphetamine. *See Buelna v. State,* No. 20A04-1305-CR-223, *6 (Ind. Ct. App. Jan. 30, 2014), (citing *Traylor,* 817 N.E.2d at 620), *trans. granted*. On transfer, the Supreme Court held that "adulterated" methamphetamine is the "final, extracted product that may contain lingering impurities or has been subsequently debased or diluted by a foreign substance – not an intermediate mixture that has not undergone the entire manufacturing process." *Buelna,* 20 N.E.3d at 142. Thus, the weight of an intermediate mixture, such as the liquid in the containers in *Buelna,* "is probative of the weight enhancement only if the

---

[3] See also, *Hundley v. State,* 951 N.E.2d 575, 581 (Ind. Ct. App. 2011), *trans. denied*, decided two years after Bowling's guilty plea, holding that where the intermediate step is so near the end of the manufacturing process that the final product is present in the chemical compound, that substance qualifies as an "adulterated drug" for purposes of our manufacturing statutes.

State presents evidence that establishes how much finished drug the intermediate mixture would have yielded if the manufacturing process had been completed." *Id.* In so holding, the *Buelna* Court abrogated this court's earlier holdings in *Traylor* and *Hundley.*

[16] Turning to the case at hand, at the time Bowling entered into his plea agreement, our Supreme Court had not yet decided *Buelna*; therefore, under *Traylor*, the State could have used the entire weight of the intermediate liquid containing methamphetamine to prove that Bowling manufactured more than three grams of adulterated methamphetamine. The ISP Laboratory Report reflected that it conducted testing on four liquid samples taken from reaction vessels; each sample contained methamphetamine, but no weight was indicated. *Pet'r's* Ex. A (Items 8A, 11A, 25A, 46A). The report also reflected that one coffee filter, containing a white powdery/crystalline substance, tested positive for methamphetamine and had a net weight of .03 of one gram. *Id*. (Item 21). Another coffee filter tested positive for methamphetamine, but no weight was provided. *Id*. (Item 63). Given this evidence, attorney Wilson believed that the State had sufficient evidence to argue for a Class A felony conviction. Based on the record before us, Bowling has failed to establish that he was misled by his counsel concerning the evidence that the State had against him or the charges he faced, nor has he shown that his decision to plead guilty was not knowingly, voluntarily, and intelligently made.

## II. Assistance of Trial Counsel

Bowling also claims that the post-conviction court erred by concluding that he received effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *Clarke v. State*, 974 N.E.2d 562, 564-65 (Ind. Ct. App. 2012) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). This is the so-called *Strickland* test. Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Clarke*, 974 N.E.2d at 564. As our Supreme Court has explained,

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Timberlake*, 753 N.E.2d at 603 (citations and quotations omitted).

With regard to the prejudice prong of the test, "'To establish the requisite prejudice, a petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Clarke*, 974 N.E.2d at 564 (quoting *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011)). Our Supreme Court has stated that a "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Smith v. State,* 765 N.E.2d 578, 585 (Ind. 2002). The two elements of *Strickland* are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Clarke*, 974 N.E.2d at 564; *see also Taylor v. State,* 840 N.E.2d 324, 331 (Ind. 2006) (failure to satisfy either component will cause ineffective assistance of counsel claim to fail).

[19] Because Bowling was convicted pursuant to a guilty plea, we must analyze his claim under *Segura v. State,* 749 N.E.2d 496 (Ind. 2001). *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002); *Clarke*, 974 N.E.2d at 565. *Segura* categorizes two main types of ineffective assistance of counsel cases: failure to advise the defendant on an issue that impairs or overlooks a defense, and an incorrect advisement of penal consequences. *Smith,* 770 N.E.2d at 295. Bowling's claim – that his trial counsel was constitutionally ineffective for failing to advise him that the State did not have enough evidence to convict him of Class A felony manufacture of methamphetamine – falls within the first of the two *Segura* categories, concerning a failure to advise on an issue that impairs or overlooks a defense. Bowling specifically argues, "Counsel should have sought reduction of the charge or advised Bowling of the credible defense available at trial." *Appellant's Br*. at 9.

[20] The *Segura* Court observed that, where a post-conviction petitioner pleaded guilty and thereafter asserts a claim of ineffective assistance based on an alleged error on an issue that affected a defense, the petitioner must show a reasonable probability of acquittal. 749 N.E.2d at 503. The Court explained,

[T]he State has an interest in the finality of guilty pleas. This is in part grounded in the cost of a new trial, and the demands on judicial resources that are imposed by revisiting the guilty plea, but also in concerns about the toll a retrial exacts from victims and witnesses who are required to revisit the crime years later. . . . A new trial is of course necessary if an unreliable plea has been accepted. But its costs should not be imposed needlessly, and that would be the result if the petitioner cannot show a reasonable probability that the ultimate result – conviction – would not have occurred despite counsel's error as to a defense.

[21]  *Id.* (citations omitted). Thus, to succeed on his ineffective assistance of counsel claim, Bowling had to prove that, but for trial counsel's alleged error concerning the evidence that the State possessed and whether that was sufficient to prove the charged Class A felony, he would not have been convicted. *See Soucy*, 22 N.E.3d at 686 (to set aside conviction because of attorney's failure to raise defense, petitioner who has pleaded guilty must establish that there is reasonable probability that he or she would not have been convicted had he or she gone to trial and used omitted defense); *Oliver v. State*, 843 N.E.2d 581, 591 (Ind. Ct. App. 2006) (where petitioner is convicted pursuant to guilty plea, and later claims that his counsel rendered ineffective assistance because counsel overlooked or impaired defense, petitioner must show that defense was indeed overlooked or impaired and that defense would have likely changed the outcome of the proceeding), *trans. denied*.

[22]  Bowling's argument that the State possessed insufficient evidence to convict him of Class A felony manufacturing methamphetamine in a quantity of three grams or more is premised on our Supreme Court's 2014 *Buelna* decision, where the Court held that an intermediate mixture was an invalid source for arriving

at the total weight for purposes of the statute. *Buelna*, 3 N.E.3d at 146. Bowling concedes, "at the time of Bowling's plea, . . . an intermediate liquid mixture containing methamphetamine could be measured and included in the three gram total," *Appellant's Br*. at 9, but he asserts that "existing precedent should have alerted counsel that the State's case against Bowling was weak." *Id*. at 8. We reject this suggestion, as trial counsel is not expected or required to anticipate future changes in the law. *Walker v. State*, 843 N.E.2d 50, 59 (Ind. Ct. App. 2008) (recognizing that counsel will not be deemed ineffective for not anticipating or initiating changes in law), *trans. denied, cert denied,* 549 U.S. 1130 (2007). Here, at the time of Bowling's guilty plea, case law provided that the entire weight of the liquid containing methamphetamine could be used to establish the weight of "adulterated" methamphetamine. *See Hundley,* 951 N.E.2d at 575, 581 (Ind. Ct. App. 2011), *trans. denied*; *Traylor,* 817 N.E.2d at 620. Therefore, the State could have used the weight of the intermediate liquid mixture in the vessels to establish the weight of the methamphetamine seized at Bowling's residence. Bowling has failed to establish a reasonable probability that, but for his counsel's alleged errors, he would have prevailed at trial. Accordingly, trial counsel's performance was not deficient, nor did it result in prejudice to Bowling.

[23] Given the state of the law as it existed at the time of Bowling's guilty plea, and the evidence that the State possessed, Bowling has failed to show clear error in the post-conviction court's findings and conclusions, which determined that

Bowling knowingly, voluntarily, and intelligently pleaded guilty and that Bowling received effective assistance of trial counsel.

[24] Affirmed.

Vaidik, C.J., and Bradford, J., concur.