# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ERIC C. BOHNET**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 18 2013, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALEX CARRILLO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1108-PC-437 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
The Honorable Anne Flannelly, Commissioner
Cause No. 49F09-9705-PC-65844

February 18, 2013

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In 1997, Alex Carrillo, a citizen of Ecuador who immigrated to the United States when he was one year old, pled guilty to possession of cocaine. Carrillo now appeals the denial of his petition for post-conviction relief ("PCR"), in which he argued that his guilty plea counsel provided ineffective assistance by failing to advise him that there could be negative immigration consequences as a result of his guilty plea. On appeal, he argues that the post-conviction court erred in concluding that he failed to establish prejudice resulting from his attorney's failure to advise him. Concluding that Carrillo failed to show an objectively reasonable probability that but for his counsel's failure to advise him of possible adverse immigration consequences, he would have decided to decline his guilty plea, we affirm.

**Facts and Procedural History**

Carrillo was born in Ecuador in 1965. He immigrated to the United States when he was one year old. He has lived his entire life in the United States but remains a citizen of Ecuador.

On May 7, 1997, Indianapolis police reported to the scene of a motorcycle accident. The police found Carrillo at the scene and determined that he had been the motorcycle driver. Carrillo appeared to be intoxicated, and he was arrested for public intoxication. During a search incident to arrest, the police saw Carrillo drop a clear plastic baggie containing what appeared to be crack cocaine. The substance later tested positive for cocaine and weighed 0.18 grams.

The State charged Carrillo with class D felony possession of cocaine and class B misdemeanor public intoxication. Carrillo was represented by a public defender. At the post-conviction hearing, Carrillo's public defender testified that he had filed a motion for Carrillo's resident alien identification to be returned to him on September 12, 1997, and therefore, there was "a really good chance" that he knew that Carrillo was not a United States citizen. Tr. at 9.

In September 1997, Carrillo pled guilty to class D felony possession of cocaine pursuant to a plea agreement that provided that Carrillo would receive alternative misdemeanor sentencing and a suspended 365-day sentence. The State dismissed the public intoxication charge. The trial court entered judgment of conviction for class A misdemeanor possession of cocaine and sentenced Carrillo to 365 days, suspended.

On April 11, 2011, Carrillo was detained by federal immigration authorities. He faces deportation proceedings based in part upon his 1997 conviction for possession of cocaine.[1]

On May 10, 2011, Carrillo filed a PCR petition alleging that his guilty plea counsel did not provide effective assistance of counsel in failing to advise him that pleading guilty could adversely affect his immigration status and could result in deportation. Following a hearing, the post-conviction court issued an order denying Carrillo's petition. The post-conviction court concluded in relevant part that Carrillo failed to establish that prejudice

---

[1] The U.S. Immigration and Nationality Act provides that an alien is subject to deportation for violating "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 8 U.S.C.A. § 1227(a)(2)(B)(i).

resulted from his counsel's failure to advise him of the possible deportation consequences of his guilty plea.

Carrillo appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

This is an appeal from the denial of a PCR petition.

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. …. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006) (citations omitted).

Carrillo contends that the post-conviction court erred in finding that he was not denied the effective assistance of trial counsel. "The petitioner for post-conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence." *State v. Holmes*, 728 N.E.2d 164, 168 (Ind. 2000) (citing Ind. Post-Conviction Rule 1(5)). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *cert. denied* (2001). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Prejudice results

4

where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). "Failure to satisfy either prong will cause the claim to fail." *French*, 778 N.E.2d at 824. Thus, if the petitioner cannot establish prejudice, we need not evaluate counsel's performance. *Bryant v. State*, 959 N.E.2d 315, 319 (Ind. Ct. App. 2011). In this case, we decide Carrillo's ineffective assistance claim based on the prejudice prong.[2]

Carrillo argues that his attorney was ineffective for failing to inform him that pleading guilty could carry adverse immigration consequences. To establish prejudice for such ineffective assistance claims,

> a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001). In other words, "a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v.*

---

[2] Several years before Carrillo entered his guilty plea, another panel of this Court held that an attorney's failure to advise a noncitizen defendant of the deportation consequences of a guilty plea may constitute ineffective assistance. *Williams v. State*, 641 N.E.2d 44, 49 (Ind. Ct. App. 1994) *trans. denied* (1995). Because we decide Carrillo's claim on the basis of prejudice, we express no opinion as to whether Carrillo's attorney's performance was deficient.

*Lockhart*, 474 U.S. 52, 59 (1985)).  Accordingly, Carrillo's self-serving testimony that he would not have pled guilty had his attorney advised him of the risk of deportation is by itself insufficient to establish prejudice.

In *Sial v. State*, 862 N.E.2d 702, 706 (Ind. Ct. App. 2007), we held that the defendant did establish objective facts, or "special circumstances" to satisfy the prejudice prong of an ineffective assistance claim based on the failure to advise of the possible adverse immigration consequences from pleading guilty.  The *Sial* court reasoned as follows:

> Sial testified that he has a wife and a thirteen-year-old daughter.  Inasmuch as Sial has been in the United States for over twenty years, we infer that his daughter was likely born here and, consequently, would be an American citizen.  If deported, Sial would be forced either to leave his wife and child behind or to uproot them from this country–most likely the only home his daughter has ever known.  We believe that these are sufficient special circumstances and specific facts to establish a reasonable probability that if Sial's attorney had advised him that deportation is a possible consequence of a felony conviction, Sial would have chosen to proceed to trial rather than to plead guilty.

*Id*. (citation omitted).

In contrast, the court in *Trujillo v. State*, 962 N.E.2d 110, 116 (Ind. Ct. App. 2011), concluded that the defendant "failed to demonstrate the presence of special circumstances within the meaning of *Segura* and therefore failed to demonstrate that he suffered prejudice" from counsel's failure to advise him regarding the immigration consequences of pleading guilty.  There, Trujillo came to the United States when he was sixteen years old.  When he pled guilty in 2008, he was fifty-two years old and had lived in the United States for thirty-four years.  The *Trujillo* court did not find the length of time that the defendant lived in the United States to be a special circumstance in light of the defendant's family situation.  The

6

*Trujillo* court concluded that the defendant's family ties did not amount to special circumstances, explaining that at the time of his guilty plea,

> he lived with his mother and did not mention a spouse or children, much less minor children, and thus failed to establish that he had a spouse or children. The prospect of forcibly separating from one's nuclear family that includes minor children is the sort of compelling circumstance that might indeed motivate one to forego whatever advantages may attach to pleading guilty, and instead to face whatever hazards attend a trial on the merits. The prospect of a middle-aged man separating from his mother and relatives other than a spouse or children are not nearly so compelling. Therefore, Trujillo's family situation is fundamentally different from the petitioner's in *Sial*.

*Id*.

Since *Sial* and *Trujillo*, this Court has further developed the analysis used to determine whether, but for counsel's failure to advise a defendant of the possible adverse immigration consequences of pleading guilty, a reasonable defendant would have declined to enter a guilty plea. In *Clarke v. State*, 974 N.E.2d 562, 566 (Ind. Ct. App. 2012), the court stated that the strength of the State's case against the defendant and the benefit to the defendant from pleading guilty were also factors that a reasonable defendant would consider in deciding whether to plead guilty.[3] *See also Segura*, 749 N.E.2d at 507 ("We see no reason to require revisiting a guilty plea if, at the end of the day, the inevitable result is conviction and the same sentence.").

In *Clarke*, at the time of the defendant's guilty plea to dealing in cocaine, he was thirty-three years old and had lived in the United States for eleven years. The *Clarke* court

---

[3] These factors were also part of the analysis in *Suarez v. State*, 967 N.E.2d 552, 556 (Ind. Ct. App. 2012), *trans. pending*, and *Gulzar v. State*, 971 N.E.2d 1258 1261-62 (Ind. Ct. App. 2012), *trans. pending*. In each case, the court concluded that the defendant failed to establish prejudice resulting from counsel's failure to advise that pleading guilty carried the risk of deportation.

did not find that his eleven years in the United States was so long that it constituted a special circumstance standing alone. Also at the time of his guilty plea, the defendant had two children who were still in-utero, but he was not married to either of the women carrying his child. The *Clarke* court believed that these facts weakened the defendant's argument that his ties to his children were special circumstances, but for purposes of the appeal, the court assumed, without deciding, that these were special circumstances. Nevertheless, because of the strength of the case against the defendant and the substantial benefit he received from pleading guilty, the *Clarke* court concluded that the defendant would have pled guilty even if he had been advised of the risk of deportation.

Clarke had been charged with class A felony dealing in cocaine and pled guilty to class B felony dealing in cocaine and was sentenced to six years in prison, all but two days suspended, and ordered to serve two years on probation. He later pled guilty to resisting law enforcement, and in so doing, violated his probation for his dealing conviction. Pursuant to the plea agreement for resisting law enforcement, the trial court ordered the defendant to serve five years of the previously suspended sentence consecutive to the one-year sentence for resisting law enforcement. The *Clarke* court reasoned that

> [t]he evidence against Clarke included the contraband, the large amount of cash found in the vehicle, and, we presume, the testimony of the two officers at the scene of the stop and arrest. Based upon the nature and strength of this evidence, we conclude that the objective probability of success at trial was low. Moreover, Clarke received a significant benefit in exchange for his guilty plea. The State agreed to reduce the dealing charge from a class A to a class B felony, and agreed to dismiss the marijuana charge and the resisting charge. The reduction in the dealing charge alone reduced his sentence exposure from an advisory sentence of thirty years to an advisory sentence of ten years. As it was, he was sentenced to six years, all suspended, and two

8

years on probation.  In summary, Clarke received a substantial benefit from his guilty plea.

Even assuming Clarke has established special circumstances with respect to his unborn children, considering the strength of the evidence against him and the significant benefit conferred upon him under the plea agreement, we conclude that the knowledge of the risk of deportation would not have affected a reasonable defendant's decision to plead guilty. Although deportation would be a considerable inconvenience for Clarke, it is reasonable to assume he would be in a better position to provide for his then-unborn children from Barbados than from prison. Accordingly, Clarke has not established that he was prejudiced by trial counsel's failure to advise him of the risk of deportation.

*Id*. at 568.

Turning now to the facts of this case, Carrillo argues that at the time of his guilty plea in 1997, he had lived in the United States for thirty years and had not been to Ecuador since 1990.  Citing to the post-conviction hearing transcript, he notes that he has a wife, five children, parents, sisters, and other relatives that all live in the United States and claims that being deported to Ecuador would be like being in exile.  Tr. at 11-13.  Our review of the transcript shows that Carrillo testified regarding his family situation *as it existed at the time of the post-conviction hearing*, not as it was in 1997.  The post-conviction hearing was held in June 2011, nearly fourteen years after his guilty plea.  To decide whether Carrillo was prejudiced by counsel's failure to advise him of the possible deportation consequences of pleading guilty, the relevant circumstances are those that existed in 1997 and whether those circumstances establish an objectively reasonable probability that Carrillo would not have pled guilty if he had been advised that adverse immigration consequences could result from pleading guilty.

9

Our review of the record before us shows that Carrillo did not testify as to whether he was married in 1997. He testified that he was currently married but separated and that he and his wife had four children together. *Id*. at 11. He did not testify as to the ages of those children.[4] He did testify that he had a fifth child who at the time of the post-conviction hearing was twenty years old. *Id*. at 12. That child would have been around six years old in 1997. However, there is nothing in the record regarding whether Carrillo lived with or supported that child or had any relationship with that child's mother at the time he pled guilty. All the record establishes is that in 1997 Carrillo had lived in the United States for thirty years, had not been to Ecuador in seven years, and had an eleven-year-old child. Carrillo's family circumstances are not as compelling as the defendant's in *Sial*, but are more compelling than those of the defendants in *Trujillo* and *Clarke*.

Taking into account the age at which Carrillo came to the United States, the length of time that he has lived here, and the fact that he had an eleven-year old child, it seems reasonable that the possibility of having to leave the United States would be a factor that a reasonable defendant would pause to consider when deciding whether or not to accept a guilty plea that would have negative immigration consequences.[5] Whether a reasonable

---

[4] In Carrillo's companion case that we decide today, *Carrillo v. State*, No. 49A02-1112-PC-1209 (Ind. Ct. App. Feb. 18, 2013), Carrillo testified to the ages of his children at his post-conviction hearing. He did not do so in this case, however, and we must make our decision based upon the evidence presented to the post-conviction court in this case. *See Schaefer v. Kumar*, 804 N.E.2d 184, 187 n.3 (Ind. Ct. App. 2004) ("It is well settled that matters outside the record cannot be considered by this court on appeal.").

[5] The State argues that in 1997, Carrillo already had two convictions for misdemeanor conversion, which, being crimes of moral turpitude, made him eligible for deportation. Therefore, the State asserts, the immigration consequences would not have been a decisive factor regarding whether to plead guilty. However, there is no evidence that Carrillo knew that he had deportable convictions.

defendant in Carrillo's place would have decided to reject the guilty plea and go to trial must now be evaluated in light of the strength of the case against Carrillo and the benefit that he received from pleading guilty.

The State had a very strong case that Carrillo committed possession of cocaine. The police saw him drop a clear plastic baggie that contained a substance that tested positive for cocaine. The officers' testimony, the cocaine, and the laboratory report would have been overwhelming evidence of Carrillo's guilt. Carrillo also benefited by pleading guilty. He received alternate misdemeanor sentencing and a fully suspended sentence thereby avoiding a first felony conviction and incarceration. The State also dismissed the misdemeanor public intoxication charge. Accordingly, we conclude that Carrillo has failed to show that there is an objectively reasonable probability that but for his counsel's failure to advise him of possible adverse immigration consequences, he would have decided not to plead guilty.[6] Therefore, we affirm the denial of Carrillo's petition for post-conviction relief.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[6] Carrillo argues that if he had known that he could be deported as a result of pleading guilty to possession of cocaine, he could have negotiated a guilty plea to the public intoxication charge. Appellant's Br. at 9-10. Carrillo relies on *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), in which the Supreme Court observed that defense counsel "may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence." The *Padilla* court made that observation in considering whether counsel's failure to inform a defendant that adverse immigration consequences could result from pleading guilty was deficient performance. The issue of prejudice was not before the Supreme Court because it had not been ruled on by the court below. Thus, the possibility of various plea agreements was not considered in the context of prejudice. In addition, whether the State would have agreed to allow Carrillo to plead guilty to public intoxication and dismiss the possession of cocaine charge is pure speculation, in which we will not engage.