## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 20 2017, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Stephen T. Owens<br>Public Defender of Indiana | Curtis T. Hill, Jr.<br>Attorney General |
| Deidre R. Eltzroth<br>Deputy Public Defender<br>Indianapolis, Indiana | J.T. Whitehead<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James A. Briley, Jr.,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | June 20, 2017<br><br>Court of Appeals Case No.<br>58A01-1611-PC-2587<br><br>Appeal from the<br>Ohio Circuit Court<br><br>The Honorable<br>James D. Humphrey, Judge<br><br>Trial Court Cause No.<br>58C01-1310-PC-3 |

**Kirsch, Judge.**

[1] Through plea agreements in two counties, James A. Briley ("Briley") pleaded guilty to two Class B felony burglaries and six Class C felony burglaries. He

filed a petition for post-conviction relief, challenging his plea to the two Class B felony convictions.[1]  The post-conviction court denied relief.  He appeals the denial of his petition raising the following restated issues:

> I.  Whether Briley received ineffective assistance of trial counsel; and
>
> II.  Whether Briley's guilty plea was knowing, intelligent, and voluntary.

We affirm.

## Facts and Procedural History

Following investigation into a string of burglaries occurring in Ohio, Dearborn, and Switzerland counties, the State charged Briley, in October and November 2009, with sixteen felonies, eight in Ohio county and eight in Dearborn County. The Ohio charges consisted of:  Count I, Class B felony burglary; Count II, Class B felony conspiracy to commit burglary; Count III, Class C felony burglary; Count IV, Class C felony conspiracy to commit burglary; Count V, Class C felony burglary; Count VI, Class C felony conspiracy to commit burglary; Count VII, Class B felony burglary; Count VIII, Class B felony conspiracy to commit burglary.  *Pet'r's Ex.* 4.  The burglaries were committed at various bars and restaurants.  The two Class B felony burglary charges, Counts I and VII, occurred at the River House III ("the River House") and Hong Kong

---

[1] Briley does not appeal the six Class C felony convictions.

Kitchen, respectively, and were elevated to a Class B felony because each was alleged to have been committed at a business with an attached dwelling. Briley was similarly charged in Dearborn County with having committed eight Class C felony burglary offenses. *See Pet'r's Ex.* 1 at 10-12 (guilty plea transcript referring to Dearborn charges).

[4]     On April 23, 2010, Briley entered into a Negotiated Plea Agreement ("Agreement") in which he agreed to plead guilty to the following four counts of burglary in Ohio County:  Count I and VII, Class B felonies (for burglaries committed at Hong Kong Kitchen and River House, respectively) and Counts III and V, Class C felonies; Counts II, IV, VI, and VIII were dismissed, and sentencing was left open to trial court discretion. Around the same time, Briley entered into a similar plea agreement resolving the pending Class C felony burglaries in Dearborn County, pleading guilty to four counts of Class C felony burglary, Counts I, III, V, and VII; the remaining four counts were dismissed. In total, Briley pleaded guilty to two Class B felony burglary charges and six Class C felony burglary charges, and eight felony charges, consisting of burglary and conspiracy to commit burglary, were dismissed.

[5]     The trial court held a hearing on the two pleas on April 23, 2010.[2]  At the guilty plea hearing, the trial court specifically addressed the fact that Briley was pleading guilty to, not only Class C felonies, but also to Class B felonies:  "I

---

[2] By agreement of the parties, the trial court conducted the guilty plea hearing on both the Ohio County and the Dearborn County cases.

want to make sure you understand that you have two Class B felonies here." *Id.* at 18. After that, Briley admitted the factual basis for the eight burglary charges to which he was pleading guilty, including, as is relevant here, "Count I, that on or about between October 17, 2009, and October 20, 2009, in Ohio County, State of Indiana, James A. Briley did break and enter the building or structure of another person, that being the River House III business and attached dwelling owned by [William] Sherman, located at 143 Main Street, Rising Sun, Ohio County, State of Indiana, with the intent to commit the felony of theft therein" and "Count VII, on or about November 7, 2009, in Ohio County, State of Indiana, James A. Briley did break and enter the building or structure of another person, to-wit: Hong Kong Kitchen business and attached dwelling, owned by Min [Qui], located at 206 Main Street, Ohio County, State of Indiana, with the intent to commit the felony of theft therein." *Id.* at 19-20. The trial court advised Briley that a Class B felony is punishable by a sentence of six to twenty years, with an advisory sentence of ten, and a Class C felony is punishable by a sentence of two to eight years, with an advisory of four years, and it reminded Briley that sentencing was left to the discretion of the trial court. *Id.* at 15.

[6] At the subsequent sentencing hearing, Briley presented character and conduct witnesses and testified on his own behalf. Among other things, Briley testified that he was breaking into the buildings to steal money to support his drug habit, but that he did not intend to encounter people or hurt anyone. He utilized his electrician skills to plan and methodically

carry out the burglaries. He used a GPS, mask, gloves, and walkie talkies to converse with one or more other individuals that he had persuaded or "buffaloed" into assisting him. *Id*. at 68. Briley admitted that he had two prior felony convictions, one in 2008 for being a convicted felon in possession of a firearm, and one in 1999 for "carrying a weapon where alcohol was served."[3] *Id*. at 57. Briley also admitted that he had a significant drug problem at the time of his arrest, was committing the burglaries *to steal money* to "feed [his] drug habit," and was on probation at the time of the current offenses. *Id*. at 66. The State presented the testimony of Detective Normal Rimstidt ("Detective Rimstidt"), who stated that, after investigation and surveillance, investigators believed one individual was behind the string of burglaries and that, when Briley was apprehended and interviewed, he was, at first, not forthcoming, but thereafter was very cooperative.

[7] The hearing was concluded and, when it resumed at a later date, the trial court addressed what it found to be aggravators and mitigators. It found as aggravating: Briley's criminal history of twelve prior convictions, including two prior felonies; the fact that he was on probation in Kentucky at the time of the current offenses; and the level of planning and calculation that went into the crimes. It found as mitigating that jail officers testified that he was

---

[3] We note that at the hearing on Briley's petition for post-conviction relief, Briley stated that the two felonies were for (1) possession of a firearm by a convicted felon and (2) possession of a controlled substance. *Tr.* at 14-15.

a good inmate, he was in a committed relationship, and he pleaded guilty; however, the trial court found that "none . . . [rose] to the level of a significant mitigating factor." *Id*. at 92.

[8] On August 13, 2010, the trial court issued its written Judgment and Pronouncement of Sentence ("Sentencing Order"). For the four Ohio County burglary convictions, the trial court sentenced Briley to twenty years on each of the two Class B felony convictions and six years on each of the two Class C felony convictions, to run concurrent with each other, for a total of twenty years. On each of the four Dearborn County Class C felony burglary convictions, the trial court sentenced Briley to six years, to be served concurrently. The trial court ordered the Dearborn County sentences to be served consecutive to the Ohio County sentences, for a twenty-six-year aggregate sentence in the Indiana Department of Correction. The trial court's Sentencing Order addressed the aggravating and mitigating circumstances that were discussed at the prior hearing, as well as "the number of burglary offenses . . . indicating Defendant's level of dangerousness to the community." *Pet'r's Ex*. 6. The trial court also found that each of the eight offenses occurred at a separate date, at separate locations, and involved separate victims. *Id*.

[9] On October 31, 2013, Briley filed his *pro se* Petition for Post-Conviction Relief in which he challenged his conviction to the elevated burglary charges. *Appellant's App*. at 13. The petition was later amended by counsel to allege claims that Briley received ineffective assistance of counsel because he was misled about the choices before him, the State lacked sufficient evidence to

support the Class B felony burglary charges, and his plea was not knowing, voluntary, and intelligent. *Id*. at 36-38. Briley's petition asserted that counsel failed to properly investigate and "[h]ad he done so, Briley would have refused the plea, insisted on taking the case to trial, and would have succeeded in defending himself against the elevated [] charge[s]." *Id*. at 37.

[10] On October 28, 2016, the post-conviction court held a hearing on Briley's petition for post-conviction relief. Briley presented evidence consisting of the deposition testimony of the owner of Hong Kong Kitchen, Min Qui ("Qui"), and an affidavit of the manager of the River House, William Sherman ("Sherman"). Qui stated that he and his family lived in an apartment above Hong Kong Kitchen and that he had not used the restaurant for any family purpose after closing hours. *Pet'r's Ex*. 8. Sherman stated that at the time of the burglary, he lived above the River House, he kept all personal effects in his apartment, and that after the bar would close for the night, he would go upstairs and not return to the bar until the following day. *Pet'r's Ex*. 9. Qui's deposition and Sherman's affidavit each stated that the entrance to the residential apartment, which was located above each of those restaurants, was from the exterior of the building and was separate from the entrance to the restaurant.

[11] Briley also presented the testimony of his trial attorney, Gary Sorge ("Sorge"). Briley's post-conviction counsel asked Sorge about "the elevated Class B felony charges, those pertaining, specifically, to the River House and the Hong Kong Kitchen[,] and Sorge replied, "I felt like the State could easily prove that he had

actually broken into them and committed a felony." *Tr.* at 8-9. Counsel further inquired:

> Q. And how about the additional element of Burglary of a Dwelling in those two charges?
>
> A. My memory is that we discussed whether or not the State could actually prove a B felony versus a C felony, but I cannot remember why that wasn't further looked into.

*Id.* Briley also testified at the hearing, stating that he and Sorge had discussed whether Briley "could defend [himself] against the elevated burglary charges[,]" and Sorge told him that the State "had [him] by the reading of the law, that the law read a dwelling attached[.]" *Id.* at 13. Briley's counsel asked, "Had you been advised that you could defend yourself against the B felony charges, would you have pled guilty?" *Id.* Briley replied "No" and said he would have taken the case to trial. *Id.* Upon cross-examination, Briley conceded that the eight burglaries were each separate incidents and that he had two prior felony convictions in Kentucky.

[12] The State presented the testimony of Detective Rimstidt. He stated that when on patrol during daytime hours, he regularly observed the Qui family, including their minor children, gathered in the restaurant, with the children playing or doing homework. *Id.* at 16-17. Detective Rimstidt testified that, when he was on patrol for the 6:00 p.m. to 6:00 a.m. shift, he sometimes observed the owners in the business after it was closed, doing such activities as food preparation or repairs. *Id.* at 17-19, 21.

On November 18, 2016, the post-conviction court issued a written order denying Briley's petition. Its order included the following:

> 10. On cross examination of trial counsel, Gary Sorge stated that the Petitioner received a sentence significantly less than the maximum sentence he could have received in this matter. In addition the Court finds that Mr. Sorge discussed the issue of proof of Burglary of a Dwelling or Business, with the Petitioner, in making the decision to accept the proposed plea.
>
> 11. The Court also finds that relevant legal authorities regarding the issues of "dwelling" were not sufficiently settled or clear to allow the Court to find that counsel for the Petitioner was incompetent in his representation.
>
> The Court, therefore, finds that the Petitioner has failed to show that trial counsel's performance was deficient, or that any possible deficient representation prejudiced the Petitioner and altered the outcome of the proceedings.

*Appellant's App*. at 78. Concluding that Briley failed to carry his burden of proof, the post-conviction court denied his petition for post-conviction relief. Briley now appeals.

## Discussion and Decision

Briley appeals the post-conviction court's denial of his petition for post-conviction relief. The petitioner in a post-conviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the post-conviction

court must make findings of fact and conclusions of law. P-C.R. 1(6). A petitioner who appeals the denial of his post-conviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct. App. 2013), *trans. denied*. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a post-conviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the post-conviction court. *Massey*, 955 N.E.2d at 253.

[15] In this appeal, Briley contends that the post-conviction court erred in denying his petition for post-conviction relief, asserting that his trial counsel was ineffective and that his guilty plea was not knowing, voluntary, and intelligent. Both claims stem from whether the Hong Kong Kitchen and the River House burglaries could be considered as having occurred in a dwelling under Indiana's burglary statute.

# I.  Assistance of Trial Counsel

Briley maintains that he was denied his constitutional right to effective assistance of trial counsel.  To prevail on an ineffective assistance claim, Briley must satisfy two components:  he must demonstrate both deficient performance and prejudice resulting from it.  *Carrillo v. State*, 982 N.E.2d 461, 464 (Ind. Ct. App. 2013) (citing *Ben-Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000) and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment."  *Passwater*, 989 N.E.2d at 770.  We assess counsel's performance based on facts that are known at the time and not through hindsight.  *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*.  Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole.  *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied*.  "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption."  *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007).  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Hinesley v. State*, 999 N.E.2d 975, 983 (Ind. Ct. App. 2013), *trans. denied*.

Prejudice results where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."

*Carrillo*, 982 N.E.2d at 464. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Perez v. State,* 748 N.E.2d 853, 854 (Ind. 2001). "Failure to satisfy either prong will cause the claim to fail." *French v. State,* 778 N.E.2d 816, 824 (Ind. 2002). Thus, if the petitioner cannot establish prejudice, we need not evaluate counsel's performance. *Bryant v. State,* 959 N.E.2d 315, 319 (Ind. Ct. App. 2011). Where, as here, the defendant has entered a guilty plea, he is entitled to relief only if he proves that (1) he would not have pleaded guilty absent the ineffective assistance of counsel; and (2) there is a reasonable probability that he would have received a more favorable result in a trial.[4] *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001); *Jeffries v. State*, 966 N.E.2d 773, 779 (Ind. Ct. App. 2012), *trans. denied*.

[18] Briley claims that Sorge was ineffective for failing to inform him that "[t]he State lacked sufficient evidence to elevate Briley's Class B felony charges in reliance on dwellings adjacent to both the River House and the Hong Kong Kitchen," *Appellant's Br*. at 10, and that had he been accurately advised, he would have refused the plea, insisted on taking the case to trial, and would have succeeded in defending himself against the elevated version of the charge; alternatively, he states that he would have entered a guilty plea to the lesser Class C felony charges for those burglaries and been sentenced to less time.

---

[4] As this court has recognized, a defendant's self-serving testimony that he would not have pleaded guilty is by itself insufficient to establish prejudice. *Carrillo v. State*, 982 N.E.2d 461, 465 (Ind. Ct. App. 2013).

*See id*. at 16 (asserting that he would have entered guilty plea to lesser Class C felony charges and had decreased sentence exposure).

[19] Briley's position assumes the premise that the State lacked sufficient evidence to convict Briley of burglary as a Class B felony. At the time of the crimes, Indiana law provided that burglary was a Class C felony, but was a Class B felony if "the building or structure is a . . . dwelling." Ind. Code § 35-43-2-1. Dwelling was defined as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." Ind. Code § 35-41-1-10.[5] Our courts have said that burglary of a dwelling is not so much an offense against property as it is an offense against the sanctity and security of habitation. *Howell v. State*, 53 N.E.3d 546, 549 (Ind. Ct. App. 2016), *trans. denied*. "To that end, the legislature has provided an increased penalty for burglarizing a dwelling 'because of the potential danger to the probable occupants.'" *Id*. (quoting *Byers v. State*, 521 N.E.2d 318, 319 (Ind. 1988)).

[20] Briley presented evidence at the post-conviction hearing that the businesses were on the first floor and the apartments were on the second floor in their respective buildings, that the entrances to the apartments were from the exterior of the buildings, and that personal effects were not kept in the businesses. Thus, he argues, "the adjacent apartments were physically and meaningfully separate

---

[5] This definition was moved in 2012 to Indiana Code section 35-31.5-2-107.

from the businesses Briley burgled." *Appellant's Br*. at 8-9. His evidence indicates that, had he not pleaded guilty and proceeded to trial, Briley could have presented argument and evidence in defense of the Class B felony charges. However, the State presented evidence at the post-conviction hearing in support of its contrary position. For instance, Detective Rimstidt testified that he regularly saw the Qui family use the Hong Kong Kitchen for personal purposes during the day and sometimes saw the adults there after hours. Briley urges that "[t]he post-conviction court erred in finding any credibility or relevance to Detective Rimstidt's testimony." *Id.* at 12. However, we neither reweigh evidence nor judge witness credibility, and we consider only the evidence and reasonable inferences most favorable to the judgment. *McKnight*, 1 N.E.3d at 199. Furthermore, at any trial, the factfinder would have been assigned the task of assessing Detective Rimstidt's credibility and weighing the evidence, as well as that of any other witnesses that the State may have called on the issue, against that of witnesses that Briley called to testify.

[21] In sum, the record before us indicates that a factual dispute existed, such that evidence would have been presented at trial as to if, how, and when the restaurants/bars were used for personal use, such as cooking, dining, or studying and whether or to what extent the businesses, or either of them, fulfilled a purpose connected with residential living. We agree with the State that "[g]iven the case law regarding structures that contained both dwellings

and businesses,[6] the facts of the crimes, and the evidence that would have been presented at trial, it was not unsound nor deficient for counsel to advise that the State could prevail on the elevated counts." *Appellee's Br.* at 11. Briley has not established that Sorge should have advised him that the State lacked sufficient evidence to convict him of the Class B felony charges.

[22] Nevertheless, assuming without deciding that, as Briley claims, there was insufficient evidence to prove that the burglaries committed at the Hong Kong Kitchen and at the River House constituted burglaries of a dwelling and that they should have been charged as Class C felonies – and that counsel Sorge performed deficiently for failing to so advise Briley – we still find no error. To succeed in obtaining post-conviction relief, Briley was required to prove that not only was Sorge's representation deficient, but that Briley was prejudiced thereby. *Carrillo*, 982 N.E.2d at 464. He has failed to prove such prejudice.

[23] Briley concedes that "the State only had sufficient evidence to support eight Class C felonies[.]" *Appellant's Br.* at 15. The sentencing range for

---

[6] The State argues that "[t]he lack of direct access between the business section and home section of a structure" is not necessarily "fatal to the [Class B] elevation." *Appellee's Br.* at 19. In support, the State refers us to *Shepard v. State*, 839 N.E.2d 1268, 1270 (Ind. Ct. App. 2005), where this court held that a garage attached to a home was a "dwelling" for purposes of burglary, even though there was not a point of access connecting the garage to the home and the garage was primarily used for storage. He also cites to *Minneman v. State*, 466 N.E.2d 438, 439 (Ind. 1984), *cert. denied,* 470 U.S. 1030 (1985), where a defendant broke into a store that was adjoined by a garage and living quarters and connected by interior doors. The defendant argued that the owner intended that the middle area be a commercial space, and that because he did not enter the living quarters, he had not broken into a dwelling, but the *Minneman* Court found that it was "immaterial" that the designated living quarters were not entered. 466 N.E.2d at 440.

Class C felony is two to eight years, with the advisory being four. Ind. Code § 35-50-2-6. Thus, if convicted of eight Class C felonies Briley faced a maximum of sixty-four years, if the four sentences in each county were ordered to be served consecutive to each other, as well as consecutive to those in the other county. Here, for each of the six Class C felonies to which Briley pleaded guilty, the trial court sentenced him to six years of imprisonment; there is nothing in the record to suggest that if the two Class B felonies were, instead, Class C felonies, the trial court would have imposed anything less than six years per conviction. Assuming for the moment that he received that same six-year term for each of eight Class C felony convictions, his aggregate sentence, if entirely consecutive, would be forty-eight years, which is twenty-two years more than the twenty-six-year sentence that he received in the Sentencing Order.

[24] Briley contends that the record suggests that, if he had been convicted of eight Class C felonies (instead of two Class B felonies and six Class C felonies), the trial court would have imposed "a similar sentence," whereby four six-year Ohio County convictions would run concurrent with each other, and four six-year Dearborn County convictions would run concurrent with each other and consecutive to those in Ohio county, such that "Briley would have received a sentence of twelve years aggregate between the two counties." *Appellant's Br.* at 15. Given the record before us, this assertion not only is speculative, but also assumes far too

much in terms of what the trial court would or would not do had it imposed sentence on eight Class C felonies. Specifically, the trial court's Sentencing Order recognized that Briley was on probation at the time of his offense, he had twelve prior convictions, two of which were prior felonies, which might have exposed him to an habitual offender charge. The trial court also stated that it considered each of the burglaries in each of the counties as separate offenses because they occurred on different dates, were in different locations, and had different victims and, further, that the number of burglaries reflected a "level of dangerousness to the community." *Pet'r's Ex.* 6. The trial court specifically recognized the degree of skill and planning that Briley used to conduct the crimes, including Briley's use of his skills as an electrician, a GPS, mask, gloves, and walkies-talkies to communicate with one or more accomplices that he had persuaded or tricked into assisting him. Based on the record before us, we reject Briley's suggestion that, if all eight of the convictions would have been entered as Class C felonies, it is likely that he would have received a lesser sentence. Under *Segura*, Briley was required to show that "there is a reasonable probability that he would have received a more favorable result in a competently run trial." 749 N.E.2d at 507. We find that he has not done so. Briley has failed to show that he was prejudiced by the performance of his trial counsel, and, accordingly, the post-conviction court did not err when it denied his petition for post-conviction relief.

## II. Guilty Plea

[25] Briley claims that his guilty plea to two Class B felonies was not knowing, intelligent and voluntary pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article One, Sections Twelve and Thirteen of the Indiana Constitution. "The long-standing test for the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010) (quoting *North Carolina v. Alford*, 400 U.S. 24, 31 (1970)).

[26] Before accepting a guilty plea, a trial court judge is required to take steps to ensure that a defendant's plea is voluntary. *See* Ind. Code §§ 35-35-1-2, -3. Here, at the guilty plea hearing, the trial court informed Briley of his rights were he to go to trial, confirmed that Briley understood those rights, that he had read his advisement, and informed Briley of the State's burden of proof if he went to trial. The trial court reviewed the charges with Briley and confirmed that he understood the nature of the charges to which he would be pleading guilty, including two Class B felonies, if the trial court accepted the agreement, and it advised Briley of the potential penalties. Generally speaking, if a trial court undertakes these steps, a post-conviction petitioner will have a difficult time overturning his guilty plea on collateral attack. *Lineberry v. State*, 747 N.E.2d 1151, 1156 (Ind. Ct. App. 2001). However, a defendant who can show that he was coerced

or misled into pleading guilty by the judge, prosecutor, or defense counsel will present a colorable claim for relief. *Id.* In assessing the voluntariness of the plea, appellate courts review all the evidence before the post-conviction court, including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are part of the record. *Diaz*, 934 N.E.2d at 1094. Here, Briley's claim is that he was "misadvised of his penal consequences when he was told he faced Class B felonies rather than lesser Class C felony charges[,]" and "had he known he faced only Class C felonies, he would not have pled to B felonies[.]" *Appellant's Br.* at 17.

[27] Contrary to his argument, Briley did, in fact, "face[]" Class B felonies. *Id.* He was charged with having committed two, and as we determined above, the post-conviction court heard evidence that if trial had occurred each party would have presented evidence as to whether the locations Briley burglarized served some residential purpose or would otherwise constitute a dwelling under Indiana law. According to the testimony of both Sorge and Briley, Sorge discussed the elevated Class B felony charges with Briley, and Sorge believed that the facts and law were against the defense. *Tr.* at 13. At the guilty plea hearing, the trial court expressly confirmed with Briley his understanding that he was pleading guilty to two Class B felonies, it confirmed his understanding of possible penalties, and Briley admitted the factual basis as alleged for the charges. *Pet'r's Ex.* 1 at 18-20.

Briley has not shown that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the post-conviction court. Accordingly, we find that the post-conviction court did not err when it denied Briley's petition for post-conviction relief.

Affirmed.

Mathias, J., and Altice, J., concur.